**EXHIBIT D**

Sworn Declaration of Jay Gonslaves, President and CEO of Action Collection Agencies, Inc.

[attached hereto]

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACA INTERNATIONAL, LLC; COLLECTION BUREAU SERVICES, INC.<br><br>      Plaintiffs,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU; and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau,<br><br>      Defendants. | Case No. 1:24-cv-03118-DLF |

**SWORN DECLARATION IN SUPPORT OF PLAINTIFFS'
MOTION FOR INJUNCTIVE RELIEF**

  1. I, Jay Gonsalves, am the President and owner of Action Collection Agencies, Inc. d/b/a Action Collection Agency of Boston ("Action Collection"). Action Collection Agencies, Inc. is a member of ACA International ("ACA"). As President, I am responsible for ensuring that Action Collection's consumer debt collection programs are in compliance with federal and sate laws and regulations.

  2. If the advisory opinion released by the Consumer Financial Protection Bureau ("CFPB") on October 1, 2024 ("Advisory Opinion") becomes effective on December 3, 2024, my business will suffer significant and substantial harm. The additional legal requirements and standards will be expensive to implement and require significant staff time and resources. In some cases, our routine work conducted *before* the Advisory Opinion will now be impracticably expensive *after* the

1

Advisory Opinion, which indicates the legislative and substantive nature of the Opinion.

3.     I am over the age of 18 and have personal knowledge of the facts sworn to herein and if called to testify I could and would competently testify as set forth in this document. I submit this Declaration in support of ACA's and Collection Bureau Services, Inc.'s (collectively, "Plaintiffs") Motion for a Preliminary Injunction and Temporary Restraining Order.

4.     Action Collection Agency of Boston was founded in Boston in April of 1967 by partners John F. "Jack" Lacey and the late Raymond L. Hill, providing collection services to Massachusetts' hospitals, healthcare providers, and utility companies. It was among the very first collection agencies licensed by the Massachusetts Division of Banks, and has been continuously operating since that time. Action Collection is now licensed by and operates in several other states in addition to Massachusetts.

5.     I acquired the company in 1991 and formed Action Collection Agencies, Inc. as a sub S corporation to both facilitate the acquisition and also provide a corporate structure for other accounts-receivable management entities, such as ACA Revenue Systems, a first-party healthcare follow-up and insurance re-billing entity. Action Collection is a Professional Practices Management System (PPMS®)-certified agency by ACA International, Inc.

6.     Prior to my acquisition of the companies, I was a senior executive at Osborne Associates, Inc., which was a large, Boston-based healthcare collection agency. Prior to that I held various management positions at St. Luke's Hospital in New Bedford. I hold a Masters in Healthcare Administration from Salve Regina College. I am a past president and board member of ACA International, Inc., and also an ACA Certified Instructor, teaching numerous compliance training programs to agency members nationally. I am also a past president of the New England Collectors Association.

7.     Action Collection is an equal opportunity employer with a diverse workforce and

leadership, not unlike the industry in general. Our employees are mostly women and people of color. Many of them have achieved financial independence and other benefits through their employment that they would not have elsewhere, based on their education and skills. They perform highly-skilled, highly regulated, and exceedingly necessary functions for which they have been well trained and are well compensated. Many of them have been with the company for decades.

8. Action Collection has a long history of working professionally with Massachusetts consumers since its inception in 1967. Over the company's tenure, it has come to specialize in medical collections, and it provides third-party collection services to a significant number of Massachusetts' healthcare systems, including some of its largest.

9. Massachusetts healthcare providers make up a significant percentage of our business. To be clear, the consumer accounts Action Collection collects on are not purchased, but are assigned to Action Collection by its clients for follow up on average at 120 days or more past due, with many being delinquent for close to a year. Action Collection does not own the accounts it seeks to collect. After the placement with Action Collection, it sends letters informing the consumers that their accounts have been placed with Action Collection for collections, apprising them of their rights under state and federal debt collection laws.

10. The Advisory Opinion makes our work more difficult, more expensive, and more complicated. The Advisory Opinion imposes four new substantive rules on us and all debt collectors: (1) a new requirement to review account-level documents, (2) a new "reasonableness" standard, (3) a new definition of "default," and (4) a new requirement to conduct medical provider audits. Each of these new rule changes will create substantial harm on our finances and business outlook.

11. First, the Advisory Opinion requires us to review account-level documents prior to beginning collections. 89 Fed. Reg. 80722. This is new; currently, Action Collection does not review account-level documents for every account prior to collections. Often times, it does not have access

to account-level documents. Even when it does, it is no guarantee that its access will provide the information needed.

12. Even when Action Collection has access to account-level documents, it is no guarantee that the information provided will aid in making the now-required independent legal determination. For example, Action Collection recently settled a lawsuit where it attempted to collect on a debt when the consumer had workers' compensation coverage that should have applied, but the medical provider did not properly account for. Action Collection actually had received account-level documentation, but this documentation *still* did not contain the information Action Collection needed to avoid liability. The CFPB's new regulations would not have addressed the actual problem with medical providers, instead continuing to shift the burden unlawfully towards debt collectors.

13. Second, the Advisory Opinion requires medical debt collectors to make a legal determination that a debt is "reasonable" and not unconscionable under state law when attempting to collect a medical debt that is not created by an express contract between the consumer and healthcare provider setting forth the dollar amount of the services. *See* Fed. Reg. 80719–20. This, again, is a new obligation. Currently, Action Collection does not make an independent legal determination as to whether the consumer has any potential legal defense prior to the debt collection.

14. Action Collection relies on the hospitals and other medical providers it collects for to make assertions about the debt they pass on to Action Collection for collections. This has been the practice for many years. Only now—with the Advisory Opinion—does that change.

15. Third, the Advisory Opinion redefines "default" to occur when the consumer has failed to pay in full "at a given time," regardless of how the creditor treats the debt. 89 Fed. Reg. 80723.

16. This new bright-line rule that all debts are in "default" if they are not paid in full "at a given time," regardless of how the creditor is treating the debt, is contrary to longstanding law

interpreting the FDCPA. Action Collection's interpretation and current processes support the idea that if there is not an agreement between the consumer and creditor, nor state law that defines when a consumer defaults, courts will make a factual determination on a case-by-case basis to determine whether a debt is in "default" under the FDCPA.

17. This particularly affects Action Collection's first-party healthcare follow-up and insurance re-billing business that operates under the name ACA Revenue Systems. This separate medical billing services business provides medical billing services for healthcare accounts that are aging, but not considered in "default" by the healthcare providers. In Action Collection's experience, medical providers do not consider a bill to be in default (i.e., "written off" under Generally Accepted Accounting Principles) at 31 days just because a payment in full has not been made. Generally, hospitals and medical providers do not charge-off accounts but instead give consumers a flexible period to pay medical bills and process insurance coverage. This benefits consumers by providing time and opportunities for a reasonable payment plan.

18. Medical billing companies, like ACA Revenue Systems, do not identify themselves as FDCPA "debt collectors" because they do not collect defaulted debt, and therefore are not required to comply with FDCPA provisions like, for example, providing a "mini-Miranda" notice when communicating about an account.

19. The Advisory Opinion changes that. Action Collection's medical billing business that was not previously a "debt collector" under the FDCPA now is—meaning that ACA Revenue Systems must develop an entirely new regulatory compliance program as a result of the Advisory Opinion. This is a material change.

20. This change has real impacts on consumers as well. If ACA Revenue Systems is subject to the FDCPA under the Advisory Opinion, the cost-savings compared to traditional debt collection that this business provides to clients will disappear, thus increasing costs for all healthcare

providers who formerly relied upon medical billing providers. These costs are passed on to consumers in the form of higher price points for goods and services. Furthermore, vastly larger numbers of patients would have the experience of being in collections—even if they received their first bill a mere 30 days earlier.

21. Finally, the Advisory Opinion requires us to ensure that the debts Action Collection collects upon are not "upcoded." 89 Fed. Reg. 80720. The only way to ensure that they are not is through comprehensive medical audits of providers. Thus, the Advisory Opinion effectively requires an entirely new regime that will involve Action Collection, and other collectors, to invade previously private medical records to determine appropriate billing practices.

22. Similar to the example above, even the medical audit may not result in all of the information needed to remain compliant. If any one provider's individual billing practices are arguably "upcoding," and they slip by our new audit, Action Collection may be liable under the FDCPA despite (1) not being involved in the coding and (2) auditing the provider to attempt to eliminate that "upcoding" on the back-end.

23. These new regulatory changes will require staff time and significant investment. I expect that these costs could exceed $362,000 per year.

24. If the Advisory Opinion is not enjoined, Action Collection will face substantial and irreparable harm. Each departure from existing regulations creates significant hardship. Action Collection must re-train staff and develop entirely new procedures. The money and time spent on this cannot be recovered. The lasting impact on our business would be irreparable.

Pursuant to LCvR 11.2, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 18, 2024

_____
Jay E. Gonsalves
President & CEO
Action Collection Agencies, Inc.