IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACA INTERNATIONAL; COLLECTION BUREAU SERVICES, INC.<br><br>Plaintiffs,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU; and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau,<br><br>Defendants. | Case No. 1:24-cv-03118-DLF |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION ON APPLICATION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

The CFPB casts aspects of the Advisory Opinion as a "reminder" merely because it uses core Fair Debt Collection Practices Act ("FDCPA") provisions as a touchstone. But while the parties may agree on the high-level legal premises, whether legal consequences flow from a rule's interpretation of "reasonable basis" and "in default" requires a "pragmatic inquiry." *See Sierra Club v. EPA*, 955 F.3d 56, 62 (D.C. Cir. 2020) (*quoting U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 598–99 (2016)). Here, ACA has submitted three sworn declarations from industry participants who believe they complied with the FDCPA before they read the Advisory Opinion; but upon review of the Advisory Opinion, the collection agency declarants determined that they must make expensive revisions to their practices to avoid CFPB enforcement or

1

supervisory action, private plaintiff litigation, and the loss of important legal rights. (Pls. Mot. for Prelim. Inj. ("Motion") at Ex. B ¶¶ 11-16; Ex. C. ¶¶ 32, 41, 49; Ex. D. ¶¶ 10-11, 13-14.)

## I. ARGUMENT IN REPLY

Despite the CFPB's styling of the Advisory Opinion as a "reminder" of debt collectors' obligations under existing law, the CFPB engaged in legislative rulemaking that without the benefit of notice and comment makes previous debt collection practices insufficient under the new law. The natural result of not following the CFPB's advice is enforcement and supervisory action with one less Constitutional right and civil money penalty mitigation defense. This is the essence of "legal consequences." And to avoid these consequences, small businesses must make outsized investments. Once spent, these funds have no source of recovery—if some businesses can afford the expenditures at all. (*See* Motion Ex. B ¶ 15 (estimating $ 400,000 annually in additional compliance expenses).) To avoid irreparable harm, the Advisory Opinion must be enjoined from taking effect.

**A.   Legal Consequences Flow from this Policy Statement and Interpretation**

First, the parties agree that three parts of the challenged rule are a change in "policy" and one part is a new "interpretation." (Motion at 15, Opp'n Br. at 9 ("As the Bureau explained, the Advisory Opinion is in part a policy statement and in part an interpretive rule.").) This meets the test under *Mendoza v. Perez* for a legislative rule. 754 F.3d 1002, 1021 (D.C. Cir. 2014) (citation omitted) ("A rule is legislative if it supplements a statute, adopts a new position inconsistent with existing regulations, or otherwise effects a substantive change in existing law or policy.")

Likewise, the parties agree that the Advisory Opinion is not interlocutory or tentative. Thus the first prong of *Bennett v. Spear* is satisfied. *Bennet v. Spear*, 520 U.S. 154, 177–78 (1997).

Therefore, the remaining issue is whether the agency action is one by which "rights or obligations have been determined," or from which "legal consequences will flow," *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970).

1. <u>The CFPA Confers Legal Consequences upon Agency Policies and Interpretations Here</u>

The CFPB employs via the Consumer Financial Protection Act ("CFPA") enforcement authority that allows it to issue Civil Investigative Demands and file litigation in its own name, (CFPA §§ 1052(c)(1); 1054); confers supervision authority over certain nondepository covered persons—including debt collectors, (CFPA § 1024(a)(1)(B)); and empowers adjudicatory proceeding authority that conveys the power to assess civil money penalties. (CFPA § 1055(c)). The CFPB can and does file enforcement actions against debt collectors. 89 Fed. Reg. at 80722 n.71 (gathering complaints and consent orders in Justice Department and Bureau cases) (*cited in* (Opp'n Br. at 16)). These enforcement actions result in damages, civil money penalties, and sometimes business closure. For example, the CFPB brought an enforcement action against Prehired, LLC, et al., for violations of the FDCPA and CFPA, among other violations, and required they pay consumer redress and cease doing business. *See State of Washington v. Prehired, LLC*, Adv. Proc. No. 23-50438-JTD, ECF No. 15 (Bankr. D. Del., November 20, 2023).

This Advisory Opinion accomplishes several goals of legal consequence for the CFPB. First, the Advisory Opinion acts as a general deterrent, forcing changes to practices so debt collectors may avoid the lengthy and expensive consequences of a CID and eventual lawsuit. Second, in the event of litigation, debt collectors lose an important due process right under the 5th and 14th Amendments because they can no longer raise the defense of lack of notice prior to enforcement. See <u>Order</u>, *CFPB v. Manseth et. al.*, No. 22-cv-29-LJV (W.D.N.Y. Aug. 22, 2023) at Section III (ruling on debt collector defendants' motion to dismiss because CFPB's novel

enforcement action violates due process rights). Third, this Advisory Opinion quickly causes a change in practice and silences parties' APA rights to participation in notice and comment. 5 U.S.C. § 704. Finally, when the CFPB moves to assess civil money penalties, debt collectors have less basis for the "good faith" mitigating factor set forth at CFPA § 1055(c)(3)(a).

Most importantly, the Advisory Opinion itself states the nexus between its advice and legal consequences. Unlike the presidential reports and general statements that have failed the *Bennett v. Spear* test in other cases, the Advisory Opinion itself states that the legal consequences of ignoring its advice is violating the FDCPA:

> The CFPB reminds debt collectors that State law may determine or limit the amount that medical providers may charge to consumers, and that collection of or an attempt to collect an amount that exceeds the allowable amount under State law (including applicable State case law) may misrepresent the amount of the debt in violation of the FDCPA. See 89 Fed. Reg. 80719–20. (*cited in* Motion at 19).

When the agency itself cites the legal consequences arising from its policy, it is hard for the agency to later argue that it intended no changes based on its expressed views.

**B.      A Reminder to Take Action Not Normally Taken is Not a Reminder**

A "reminder" of obligations that do not currently exist cannot act as a reminder. Plaintiffs provided evidence from three declarants who described the business practice changes they viewed necessary to comply with the CFPB's new interpretation of what it takes to have a "reasonable basis" to substantiate debt. (Motion at 17, 18-19.) Considering that the term "reasonable" is subject to interpretation and typically uncovered after years of litigation, the agency's policy concerning the meets and bounds of *reasonable* is by its nature beyond the FDCPA's statutory language.

For example, one of the "guidelines" that the Advisory Opinion makes regarding substantiating debt at an account level is that a "debt collector may reduce the risk of liability if it has access to full payment histories for the patient accounts." 89 Fed. Reg. 80721; (*see* Opp'n Br. at

4

17). Considering that this is the agency's "policy" when interpreting whether there is a "reasonable basis" to substantiate a debt, regulated debt collectors reasonably view this as a command to make a change. Due to its powers under the CFPA, this policy can drive enforcement action, supervisory requirements, and civil money penalties. *Supra* at 3.

And agency action is not remote, as highlighted by the CFPB's recitation of its many enforcement actions. (*See* Opp'n Br. 16.) Regulated persons assume compliance consequences from policy statements of agencies with supervisory and enforcement authority.

The CFPB argues that a final agency action requires "an action 'by which rights or obligations have been determined, or from which legal consequences will flow.'" *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Bennet v. Spear*, 520 U.S. 154, 177-78 (1997)). Here, for example, where the legal requirement inherently has an element of interpretation, the primary regulator's statements about how it would interpret certain actions itself establishes a requirement. Any enforcement action brought by the CFPB that relies on its policy interpreting whether a regulated debt collector had a "reasonable basis" to substantiate the debt will look to the Advisory Opinion, including whether the debt collector had access to full payment histories for patient accounts. Thus, there are legal consequences of the CFPB's interpretation, and there is a final agency action.

C.    **The CFPB Lacks Evidence that the Advisory Opinion has No Pragmatic Legal Consequences**

The CFPB provides no declaration or record evidence that there will not be any practical consequences to regulated debt collectors attempting to comply with the rules in the Advisory Opinion. (*See* Opp'n Br. 38.) The CFPB attempts to fall back on the statement in a footnote of the Advisory Opinion that "the type and amount of information that is necessary to substantiate a particular representation will vary" based on the circumstances. (Opp'n Br. 8, 17, 23.) However,

5

this statement is not exculpatory for the CFPB. Collection professionals and their counsel who know the "circumstances" have assessed that detailed medical records would be necessary to comply with the Advisory Opinion. (Motion Ex. B. ¶ 15, Ex. C. ¶¶ 28-29; Ex. D ¶¶ 10-11.)

In a preliminary injunction motion, parties are to attach to motion declarations and evidence in support of their positions. LCvR 65.1(c). The CFPB chose not to do so in this instance.

D. **ACA Members Will Be Irreparably Harmed by the Advisory Opinion**

ACA Members support this litigation for practical purposes: they sincerely believe that they cannot comply with the Agency's new views and their businesses will be irreparably harmed if the Advisory Opinion is allowed to go into effect. ACA and its members have also suffered from the CFPB's silencing in violation of the APA. By not engaging in notice-and-comment rulemaking while making substantive changes to current law, the CFPB closed off important channels of communication between it and stakeholders. Had notice and comment happened, ACA, CBS, and ACA members would have pointed out significant costs, harms, and public policy mistakes in the proposed rule. (Compl. ¶ 25; Motion Ex. B ¶ 18; Motion Ex. C ¶ 20.)

Declarants cite the direct costs of compliance, diminution in property values if compliance causes them to not collect on accounts, and costs that far exceed budgets of small businesses. (Motion at 26 citing Compl. ¶ 25; Motion Ex. B ¶ 18; Motion Ex. C ¶ 20.) However, the CFPB provides no support in its response that Plaintiffs won't, in fact, suffer these irreparable harms, and it cites no facts beyond their purported interpretation of the Advisory Opinion.

In light of the facts presented by Plaintiffs, the CFPB cannot and has not argued that the Advisory Opinion will not impact behavior of regulated parties who previously believed they complied with applicable law. Since there is no question that this rule failed to comply with the APA, it should be enjoined.

6

## II.     CONCLUSION

For the foregoing reasons, Plaintiffs are likely to prevail on its claims that the CFPB violated the APA under sections 553 and 706(2)(A)–(D) by failing to engage in notice-and-comment rulemaking, failing to provide evidence substantiating its findings, and therefore acting arbitrarily and capriciously, failing to remain within its statutory authority, failing to follow proper procedure under the APA. The harms caused by the enactment and implementation of the Advisory Opinion will be irreparable. Therefore, Plaintiffs respectfully request this Court set aside the Advisory Opinion to avoid substantial and irreparable harm to Plaintiffs under the CFPB's improper rulemaking.

Dated: December 2, 2024

        Respectfully submitted,

        ACA INTERNATIONAL, LLC and COLLECTION BUREAU SERVICES, INC.

        By its attorneys,

        */s/ Sarah J. Auchterlonie*
        David B. Meschke, #CO0069
        Sarah J. Auchterlonie, #489442
        Brownstein Hyatt Farber Schreck, LLP
        675 Fifteenth Street, Suite 2900
        Denver, CO 80202
        Telephone: 303-223-1100
        Email:  dmeschke@bhfs.com;
                sja@bhfs.com

        and

        Leah Dempsey, #1033593
        Brownstein Hyatt Farber Schreck, LLP
        1155 F Street, NW
        Washington, DC, 20004
        Telephone: 202.296.7353
        Email: ldempsey@bhfs.com